FILED
2010 Oct-28  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ANITA P. OLIVER, | ) |
|     Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 09-G-2515-E |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Anita P. Oliver, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

  In the instant case, ALJ Jerry M. Lang determined the plaintiff met the first two tests, but concluded that while the plaintiff's impairments of "coronary artery disease, obstructive sleep apnea, and obesity" are "severe" in combination, they did not meet or medically equal a listed impairment. [R. 14]. The ALJ found that the plaintiff retains the residual functional capacity to perform the full range of light work and as such, can perform her past relevant work as a cashier. [R. 14, 18]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERSFROM DISABLING PAIN

  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

5

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

## THE IMPACT OF AN INABILITY TO SUSTAIN FULL TIME WORK AT STEP FIVE OF THE SEQUENTIAL ANALYSIS

There is confusion in this circuit as to whether an inability to engage in full time work requires a finding of "disabled" at step five of the sequential analysis. Compare Johnson v. Harris, 612 F.2d 993, 998 (5th Cir. 1980)("It has been held that a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act."),[1] and Smith v. Schweiker, 646 F.2d 1075, 1081(5th Cir. June 4, 1981)("[T]his Court unequivocally held that a 'physical limitation which prevents the claimant from working a full work day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Social Security Act.'" (quoting Johnson v. Harris))

---

[1]  In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

with Kelly v. Apfel, 185 F.3d 1211, 1215 n. 4 (11th Cir. 1999) ("We save for another day the question of the relevance of part-time work at Step Five . . . .").

Nonetheless, it is the Commissioner's position in this circuit that only an ability to do full-time work will prevent a finding of disabled at step five.[2]  Kelly, 185 F.3d at 1214 ("In other words, at Step Five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.")  The Kelly court noted that this position is based upon Social Security Ruling 96-8p:

> That ruling provides that the relevant concept at Step Five is the residual functional capacity to perform work on a "regular and continuing basis." Social Security Ruling 96-8p.  "A 'regular and continuing basis' means 8 hours a day for 5 days a week, or an equivalent work schedule." Id.

Kelly, 185 F.3d at 1214.  Therefore, if the plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work.  If the Commissioner fails to carry this burden, the plaintiff must be found disabled.

Social Security Ruling 96-8p also applies to considerations of a claimant's RFC at step four.  However, an ability to work eight hours a day for five days a week is not necessarily required:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process.  Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough

---

[2] For a discussion of the difference between the inquiry at Step One and Step Five, and the implications of an ability to sustain part-time work at Step One, see Kelly, 185 F.3d at 1214.

>   for the person to learn to do it constitutes past relevant work, and an
>   individual who retains the RFC to perform such work must be found not
>   disabled.

SSR 96-8p, n. 2.  But, if the claimant's RFC is below that required by his or her past relevant work, and is also insufficient to allow sustained full time work, a finding of disabled is compelled by the application of SSR 96-8p.

## DISCUSSION

Although the ALJ found that the plaintiff has the severe impairments of coronary artery disease, obstructive sleep apnea and obesity, the plaintiff also alleged a combination of other impairments as well, including osteoarthritis, degenerative disc disease and incontinence.  The ALJ refused to credit the plaintiff's testimony regarding her osteoarthritis:

>   The claimant alleges that she has disabling osteoarthritis, but the record
>   contains no laboratory evidence (such as x-rays or MRI showing severe
>   arthritic changes, etc.) of significant osteoarthritis.  The record documents
>   no clinical signs (such as joint swelling and limited motion) of significant
>   osteoarthritis, nor does it document any orthopedic treatment or other
>   special therapy for joint complaints other than a remote history of injections
>   or bursitis.  Treating physician records do not document ongoing complaints
>   of incapacitating joint pain, and this together with the lack of any
>   documented medical treatment for joint pain in the past two years shows
>   that whatever joint symptoms the claimant may have are not of the disabling
>   severity alleged.

[R. 15].  Similarly, the ALJ refused to credit the plaintiff's testimony regarding her degenerative disc disease:

>   The claimant alleges having disabling disc disease, but the record contains
>   no laboratory evidence (such as MRI showing herniated disc, etc.)
>   whatsoever of any disc disease.  The record documents no clinical signs

8

> (such as unilaterally decreased reflexes, etc.) of discogenic pathology such as radiculopathy or spinal stenosis. The fact that the record documents no treatment for spine-related pain shows that if the claimant has any such pain, it is insignificant. In view of the complete absence of medical evidence of disc disease or documented complaints of symptoms thereof the allegation of disabling disc disease is unsupported and not credible.

[R. 16]. The ALJ's conclusion is not supported by substantial evidence.

An October 25, 2004, treatment record from James M. Ready, M.D., discussed x-rays and an MRI:

> The spine is showing some mild degenerative changes for the most part, <u>but there is a fair bit of sclerosis at the L4 and L5 levels with disc disease at L5</u>. The pelvis and sacroiliac joints are benign. Hips are showing some sclerotic changes of the acetabulum, but the joint space is fairly well maintained. <u>An MRI scan of the spine confirmed degenerative disc disease at L4 and L5</u>, but no herniation or stenosis. There is also a bone scan which showed some increased uptake in the lower lumbar spine, ankles, and shoulders.

[R. 179](emphasis added) On April 24, 2005, the plaintiff complained of right shoulder pain. [R. 181]. A cardiology clinic note from September 12, 2006, by Michael B. Honan, M.D., diagnosed "[o]steoarthritis all over." [R. 211]. On December 13, 2006, the plaintiff complained of left hip and right shoulder pain which she rated as a seven on a 10-point scale. [R. 274].

Likewise, the ALJ refused to credit the plaintiff's testimony regarding her incontinence:

> The claimant alleges disability due to incontinence, but the record contains no diagnosis of incontinence or chronic urinary tract pathology by any treating physician. The record documents no urological treatment since the claimant was treated for cystitis in 2001, and the lack of any such treatment for the past eight years shows that whatever urinary symptoms she may

> (such as unilaterally decreased reflexes, etc.) of discogenic pathology such as radiculopathy or spinal stenosis. The fact that the record documents no treatment for spine-related pain shows that if the claimant has any such pain, it is insignificant. In view of the complete absence of medical evidence of disc disease or documented complaints of symptoms thereof the allegation of disabling disc disease is unsupported and not credible.

[R. 16]. The ALJ's conclusion is not supported by substantial evidence.

An October 25, 2004, treatment record from James M. Ready, M.D., discussed x-rays and an MRI:

> The spine is showing some mild degenerative changes for the most part, <u>but there is a fair bit of sclerosis at the L4 and L5 levels with disc disease at L5</u>. The pelvis and sacroiliac joints are benign. Hips are showing some sclerotic changes of the acetabulum, but the joint space is fairly well maintained. <u>An MRI scan of the spine confirmed degenerative disc disease at L4 and L5</u>, but no herniation or stenosis. There is also a bone scan which showed some increased uptake in the lower lumbar spine, ankles, and shoulders.

[R. 179](emphasis added)  On April 24, 2005, the plaintiff complained of right shoulder pain. [R. 181]. A cardiology clinic note from September 12, 2006, by Michael B. Honan, M.D., diagnosed "[o]steoarthritis all over." [R. 211]. On December 13, 2006, the plaintiff complained of left hip and right shoulder pain which she rated as a seven on a 10-point scale. [R. 274].

Likewise, the ALJ refused to credit the plaintiff's testimony regarding her incontinence:

> The claimant alleges disability due to incontinence, but the record contains no diagnosis of incontinence or chronic urinary tract pathology by any treating physician. The record documents no urological treatment since the claimant was treated for cystitis in 2001, and the lack of any such treatment for the past eight years shows that whatever urinary symptoms she may

>have are not as severe as she alleges.  In view of the lack of documented urinary system pathology or ongoing treatment therefor [sic] the allegation of disabling incontinence is not supported by medical evidence and is not credible.

[R. 16].  However, the record reflects that the plaintiff was complaining of incontinence as early as December 4, 2000.  [R. 147].  On April 25, 2005, she was treated at Lincoln Family Practice for dysuria.  [R. 181].  By December 28, 2007, the plaintiff still carried the diagnosis of bladder incontinence.  [R. 306].  Treatment records from February 22, 2008, her bladder symptoms were "still bad."  [R. 310].

Moreover, the plaintiff has been treated by Mark E. Ponder, M.D., and April L. Ponder, M.D., of Lincoln Family Practice.  On August 1, 2007, Dr. April Ponder completed a Work Requirements form in regard to the plaintiff's application for food stamps.  [R. 302].  Dr. Ponder stated that she believed the plaintiff is unable to work because of coronary artery disease, rheumatoid arthritis and urinary incontinence.  [Id.]. Dr. Ponder believed that the plaintiff's condition was permanent and had existed as far back as 1998.  [Id.].  Nowhere in his decision did the ALJ discuss the opinion of Dr. Ponder.  As stated before, if the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.

It is also clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the

claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

The ALJ found that the plaintiff has the residual functional capacity to perform the full range of light work. The Commissioner's regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The definition of light work has been further clarified by Social Security Ruling 83-10:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> <u>"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two- thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.</u> Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10 **5-6 (emphasis added).  The plaintiff testified that she experiences fatigue and shortness of breath because of her heart condition.  [R. 55].  She also testified that she has arthritis in most of her joints, but mainly in her hips and shoulders.  [Id.].  Sitting and standing for long periods of time exacerbate her hip pain.  [R. 56].  The plaintiff testified that it helps to elevate her legs when sitting or lying down.  [R. 57].  She further testified that she spends half of every day in a recliner.  [Id.].  Taking the plaintiff's testimony and that of her treating physician as true, it is clear that the Commissioner erred in finding that the plaintiff could perform a full range of light work, and failed to carry his burden showing the plaintiff could perform other work.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 28 October 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.